THE MAXWELL-MCCLURE-FITTS DRY GOODS COMPANY and THE S. A. RIDER JEWELRY COMPANY et al., Interpleaders, *Appellees*, v. M. L. WOODRUFF et al. (GEORGE D. RAGSDALE et al., *Appellants*).

No. 18,228.

THE MAXWELL-MCCLURE-FITTS DRY GOODS COMPANY and THE LEHMANN HIGGINSON GROCER COMPANY et al., Interpleaders, *Appellants*, v. M. L. WOODRUFF et al. (GEORGE D. RAGSDALE et al., *Appellees*).

No. 18,272.

HEADNOTE BY THE REPORTER.

SALE—*Stock of Merchandise—Proceeds—Adjustment of Liens.* In a transaction involving the sale and disposition of a stock of merchandise the priorities of liens of various creditors upon the proceeds of the stock are adjusted and determined.

Appeals from Greenwood district court. Opinion filed June 7, 1913. Reversed.

*Lew E. Clogston, Robert H. Clogston,* both of Eureka, *Frank W. Yale,* and *Ernest S. Ellis,* both of Kansas City, Mo., for The Maxwell-McClure-Fitts Dry Goods Company *et al.*

*Gardiner Lathrop, Thomas R. Morrow, John M. Fox, Samuel W. Moore,* all of Kansas City, Mo., and *Howard J. Hodgson,* of Eureka, for George D. Ragsdale *et al.*

*Per Curiam:* The original contract was before the court in *Ellis v. Woodruff,* 88 Kan. 734, 129 Pac. 1193, and was held to constitute an equitable mortgage on the proceeds of the sale of merchandise in the hands

of the trustee.  In the judgment now appealed from the trial court so construed the original and the supplemental contract, and as no complaint is made of this ruling, such is the law of the case.

Ragsdale sold the stock to Cobban and Beach in April, 1910, and took their notes for $12,000 in payment.  The plaintiff and the intervenors, relying upon the first contract, supplied new merchandise from time to time.  We think the contention of appellants is correct that by the terms of the original contract bills for new merchandise were intended to be paid for out of the proceeds of sales, "as the bills became due," and were thus placed on the same basis as other current expenses.  The contract in terms provided that Ragsdale's notes should be paid from "the net proceeds of sales from said stocks and all other goods put into said stock," and defined what was meant by "net proceeds" by declaring that the trustee should "first" pay "from said receipts all necessary running expenses of said stock and pay for all goods purchased and put into stock as bills became due."  The trial court held that Ragsdale was entitled to a lien prior to those of the plaintiffs and the intervening creditors.

The case, in our opinion, turns wholly upon the effect to be given to the supplemental agreement entered into December 1, 1910, between Ragsdale and Woodruff, who had purchased the business from Cobban and Beach.  The answer of Ragsdale makes it certain that he relied upon this second agreement for authority to declare all his notes due by reason of default of payment of any part of his debt and to change the priority of his lien.  It is true he argues that under the first agreement he had the same right, but we do not so construe that instrument, and besides, his answer limits the issue.

On December 29, 1910, Ragsdale notified the trustee that there was a default in payment of his notes and that he had exercised his option to declare the whole

sum due, and demanded that the trustee apply all proceeds above the necessary running expenses to the payment of the notes. At that time there was a balance due him of $6600 and accrued interest, one-third of which was past due. We are of the opinion that the court should have allowed him priority to the extent of $2200 as against any claims of creditors for goods furnished before the supplemental agreement was filed for record, which were not yet due; but as to the claims of creditors for goods supplied to the stock which were due when the supplemental agreement was recorded, the court should have given priority over the claims of Ragsdale. The balance due him of $4400 is entitled to priority as against any claims of creditors for goods furnished after that time.

The costs of the abstract filed by appellants must be taxed against them. It is a transcript instead of an abstract, and is filled with useless repetition of the formal parts of apparently every journal entry made during the progress of the action, and of all the intervening petitions and other pleadings, the substance of which might have been set forth in less than a half dozen printed pages.

The judgment is reversed, with directions to find the priorities of the liens in accordance with the foregoing views.